```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA
```

ALLISON L. SMITH,                :
                                 :
        Plaintiff                :   No. 4:11-CV-183
                                 :
   vs.                           :   (Complaint Filed 1/24/11)
                                 :
MICHAEL ASTRUE,                  :
COMMISSIONER OF SOCIAL           :   (Judge Munley)
SOCIAL SECURITY,                 :
                                 :
        Defendant                :

**MEMORANDUM AND ORDER**

**Background**

  The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Allison L. Smith's claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below we will affirm the decision of the Commissioner.

  Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Smith met the insured status requirements of the Social Security Act through June 30, 2011. Tr. 13, 15 and 110.[1]

---

1. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on April 1,

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

Smith was born in the United States on April 14, 1966. Tr. 95, 76, 100 and 107. Smith completed the 11th grade in 1984 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. Tr. 30, 120 and 127. During her elementary and secondary schooling Smith attended regular education classes. Tr. 127.

Smith has a limited history of work and earnings. Tr. 111. Her past relevant employment[2] was as a housekeeper and a sorter at a goodwill store. Tr. 41. The housekeeper position was described by a vocational expert as unskilled to semi-skilled, light work, and the sorter position was described as unskilled, light work.[3] Id.

---

2011.

2. Past relevant employment in the present case means work performed by Smith during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

3. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as

2

Records of the Social Security Administration reveal that Smith had earnings in the years 1984 through 1986, 1990, 1991, 1997, and 1999 through 2008. Tr. 111.  No earnings were reported for the years 1987 through 1989, 1992 through 1996, and 1998. Id.  Smith's annual income never exceeded $6500.00 except in 2007 was there were reported earnings of $12,773.37. Id.  Smith's

---

one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

total earnings were $47,281.01. Id.

Smith claims that she became disabled on March 18, 2008,[4] because of mental illness and drug addiction from which she is recovering. Tr. 67, 95, 115 and 121.  Smith contends she has anxiety, mood swings and depression and she gets overwhelmed, confused and obsessive. Tr. 30 and 121.  Smith testified that "there are a lot of time that it's not just I can't get up and go to work, there are a lot of times I can't even get up. Or even if I do get up I have a very difficult time. It's like I'm petrified to even leave the house." Tr. 30.  Smith has not alleged or claimed that she has physical impairments that prevent her from working. Id.  Smith has not worked since March 17, 2008. Tr. 121.

On March 18, 2008, Smith filed protectively[5] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 13, 65-66 and 95-100.  On August 11, 2008, the Bureau of Disability Determination[6] denied Smith's

---

4. Smith was 41 years of age on the alleged disability onset date and only 43 years of age at the time of the administrative law judge's hearing held on September 10, 2009.  Smith is considered a "younger individual" whose age would not seriously impact his ability to adjust to other work.  20 C.F.R. §§ 404.1563(c) and 416.963(c).

5. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

6. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates

applications. Tr. 67-76.  On August 21, 2008, Smith requested a hearing before an administrative law judge. Tr. 77-78.  About 13 months later, a hearing before an administrative law judge was held on September 10, 2009. Tr. 24-45.  On October 16, 2009, the administrative law judge issued a decision denying Smith's applications. Tr. 13-23.  On October 28, 2009, Smith requested that the Appeals Council review the administrative law judge's decision. Tr. 8-9.  After 13 months had passed, the Appeals Council concluded that there was no basis upon which to grant Smith's request for review. Tr. 1-5.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On January 24, 2011, Smith filed a complaint in this court requesting that we reverse the decision of the Commissioner denying her social security disability insurance and supplemental security income benefits.  The Commissioner filed an answer to the complaint and a copy of the administrative record on April 1, 2011.  Smith filed her brief on May 6, 2011, and the Commissioner filed his brief on June 8, 2011.  The appeal[7] became ripe for disposition on June 27, 2011, when Smith elected not to file a reply brief.

---

applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration.  Tr. 68 and 73.

7. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

5

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968,

970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence,

whether a claimant (1) is engaging in substantial gainful activity,[8] (2) has an impairment that is severe or a combination of impairments that is severe,[9] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[10] (4) has the residual functional capacity to return to his or her past

---

8. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

9. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

10. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[11]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Smith had not engaged in substantial gainful work activity since March 18, 2008, the alleged disability onset date. Tr. 15.

At step two of the sequential evaluation process, the administrative law judge found that Smith had the following severe

---

11. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

10

impairments: "bipolar disorder and anxiety related disorder." Tr. 15. The administrative law judge found that Smith was diagnosed with a substance abuse disorder but that she was a recovering drug addict and the substance abuse impairment was non-severe because it did not cause more than minimal functional limitations, if any. Tr. 15.

At step three of the sequential evaluation process the administrative law judge found that Smith's impairments did not individually or in combination meet or equal a listed impairment. Tr. 16-18.

At step four of the sequential evaluation process the administrative law judge found that Smith had the

> residual functional capacity to perform a full range of work at all exertional levels but she has nonexertional limitations in that she is limited to performing simple, repetitive tasks which involve only occasional simple decision-making and judgment. The claimant is limited to low stress positions defined as having infrequent changes in work setting and conditions. She is limited to work not requiring contact with the general public and involving only occasional contact with co-workers and supervisors.

Tr. 18. Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found that Smith could perform her prior relevant unskilled, light work as a sorter. Tr.22. The administrative law judge also found based on the above residual functional capacity and the testimony of a vocational expert that Smith could perform unskilled, light work as a packer and an inspector, and that there were a significant number of such jobs in the local economy. Tr. 22.

The administrative record in this case is 282 pages in length, primarily consisting of medical and vocational records. Smith argues that the administrative law judge erred by (1) rejecting the opinion of John W. Kelsey, Ph.D., a psychologist who examined Smith, (2) rejecting a Global Assessment of Functioning (GAF) score of 50[12] assessed during drug and alcohol treatment, (3) finding that Smith's testimony was not credible, and (4) failing to find Smith disabled on the basis of the testimony of the vocational expert.

We have thoroughly reviewed the record in this case and find no merit in Smith's arguments. The administrative law judge did an excellent job of reviewing Smith's vocational history and medical records in his decision. Tr. 15-22.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 7, Brief of Defendant. Because the administrative law judge adequately reviewed the medical evidence in his decision we will only comment on a few items.

---

12. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id.  A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

Initially we will note that no treating physician, psychiatrist or psychologist has indicated that Smith suffered from mental functional limitations that would preclude her from engaging in the limited range of light work set by the administrative law judge in his decision for the requisite statutory 12 month period. In fact the closest item that comes to that requirement is a document entitled "Pennsylvania Department of Public Welfare Employability Assessment Form" completed on April 9, 2008, by Rebekah Tanner, M.D., who was Smith's primary care physician. Tr. 188-189. In that form Dr. Tanner in a conclusory fashion stated that Smith was temporarily disabled for <u>less</u> than 12 months from March 17, 2008 to October 10, 2008, because of bipolar disorder and anxiety/depression. <u>Id.</u>

There are only two times where those treating Smith recorded GAF scores. First, on April 10, 2008, while receiving treatment at White Deer Run of Williamsport, Smith was given a GAF score of 53, representing moderate symptoms. Tr. 192. However, it was noted in treatment notes of Dr. Tanner dated April 9, 2008, the day before Smith was given the GAF score of 53, that Smith had stopped taking her medication and was "not doing well at all emotionally and [was] embarrassed that she quit med's." Tr. 201. At an appointment with Dr. Tanner on April 23, 2008, Smith reported that she had been drinking "a lot" of alcohol and driving the day before the appointment. Tr. 199. A mental status examination was

13

normal except it was stated that Smith's judgment was not intact and her disposition was "teary and regretful." Tr. 200. At an appointment with Dr. Tanner on May 1, 2008, Smith reported that she had not had any alcohol binges and was taking her medications; she complained of anxiety. Tr. 197. A mental status examination was normal. Id. Smith had no hallucinations or delirium; her judgment was intact; her speech was normal and coherent; and her thought processes, grooming and disposition were normal. Tr. 197-198.

  Second, on November 1, 2008, Smith was giving a GAF score of 50, representing serious symptoms, by a therapist at Genesis House Counseling Services located in Williamsport. Tr. 276. A mental assessment on that date states in pertinent part as follows: "Client presented with being oriented x3 and her thought processing appeared coherent. Client did not seem delusional, paranoid or grandiose at the time of her assessment. Client denied any visual or audible hallucinations, and her affect was good. Client denied any self harm or homicidal thoughts[.]" Tr. 274.

  One item of evidence which arguably supports a finding of disability is the opinion of Dr. Kelsey. Tr. 206-212. Dr. Kelsey found that Smith was markedly limited in several areas of mental functioning. Id. However, the record reveals that Dr. Kelsey merely reviewed one of Smith's medical records (a one-page treatment summary from Kathleen M. Houser, B.A., a certified counselor, at White Deer Run of Williamsport) and conducted an interview of Smith. Id. Dr.

Kelsey was a non-treating psychologist and only examined Smith on one occasion. Id. The administrative law judge rejected the opinion of Dr. Kelsey because the remainder of the record did not support Dr. Kelsey's conclusion that Smith was totally disabled.

The one-page treatment summary from Ms. Houser stated that Smith had remained abstinent while in treatment and had gained insight into her disease and relapse processes. Tr. 192. Ms. Houser indicated that Smith suffered from alcohol dependence, opioid dependence in remission; bipolar disorder, not otherwise specified; and narcissistic personality disorder. Id. Furthermore, Ms. Houser could not rule out that Smith suffered from a personality disorder. Id. Ms. Houser is the one who gave Smith a GAF score of 53.

With respect to Dr. Kelsey's opinion and the GAF scores the administrative law judge in his decision stated in pertinent part as follows:

> The undersigned Administrative Law Judge gave little weight to the opinion of the consultative examiner, Dr. Kelsey, who opined that the claimant has rather severe limitations in carrying out instructions and extreme limitations in responding to work pressure and reacting to work changes. The undersigned disagrees with Dr. Kelsey since the remainder of the record does not support such a degree of limitations. . . However, the undersigned did incorporate low stress limitations into the claimant's residual functional capacity . . . .
>
> At an appointment on March 12, 2009, Dr. Tanner documents in her treatment notes that the claimant has "no unusual anxiety or evidence of depression.
>
> *   *   *   *   *   *   *   *   *   *   *   *
>
> The record . . . reflects that on November 1, 2008, the

> claimant underwent a mental status examination at the "Genesis House Counseling Service" in which she was diagnosed as having polysubstance dependence and bipolar I disorder, depressed. Her global assessment of functioning (GAF) was 50 with a fair prognosis. . . [T]he GAF score evaluation is inconsistent with Dr. Tanner's own mental status examination findings.

Tr. 20. The administrative law judge gave an adequate explanation for rejecting the opinion of Dr. Kelsey and the GAF scores.

In rejecting the opinion of Dr. Kelsey and the GAF scores and finding that Smith was not disabled, the administrative law judge relied of the opinion of Sidney D. Segal, Ed.D., a state agency psychologist. Tr. 217-232.  Dr. Segal reviewed Smith's medical records and in a "Mental Residual Functional Capacity Assessment" dated August 8, 2008, indicated that Smith "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." Tr. 232.  The administrative law judge's reliance on the opinion of Dr. Segal was appropriate. See Chandler v. Commissioner of Soc. Sec., __F.3d.__, 2011 WL 6062067 at *4 (3d Cir. Dec. 7. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

The administrative law judge appropriately took into account Smith's mental limitations in the residual functional capacity assessment. The administrative law judge limited Smith to low stress unskilled work which involved simple, repetitive tasks and

only required occasional simple decision-making and judgment.

The administrative law judge stated that Smith's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of unskilled, light work. Tr. 19. The administrative law judge was not required to accept Smith's claims regarding her mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Smith when she testified at the hearing on September 10, 2009, the administrative law judge is the one best suited to assess the credibility of Smith.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence.

17

We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.


<u>s/ James M. Munley</u>
JAMES M. MUNLEY
United States District Judge


Dated: February 27, 2012